EDWIN L. JONES et al., Appellants, *v.* ELBERT C. SMITH, Respondent.

In an action of ejectment wherein the question was as to the location of a boundary line, it appeared that the adjoining owners for more than fifty years had occupied each on his side up to an old fence; that the fence had been kept up and maintained as a division fence for more than twenty years, each owner by agreement keeping up one-half. *Held,* that this was sufficient evidence of a practical location of and an acquiescence in the fence as the boundary line, and of a possession for more than twenty years in pursuance of such location to require the submission of that question to the jury.

*Jones* v. *Smith* (3 Hun, 351) reversed; the principles, however, there stated in head-note not disturbed.

(Argued January 19, 1876; decided February 8, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department affirming a judgment in favor of defendant, entered upon an order nonsuiting plaintiff, on trial at circuit. (Reported below, 3 Hun, 351; 5 T. & C., 490.)

This action was ejectment, brought originally by David H. Jones, to recover a strip of land claimed by each party (they being adjoining owners) to belong to his farm. The question was simply as to the location of the boundary line. The original plaintiff having died after judgment, the present plaintiffs, his heirs at law and administrators, were substituted. The facts sufficiently appear in the opinion.

*R. L. Hand* for the appellants. Plaintiffs were entitled to recover the land in question. (*Baldwin* v. *Brown*, 16 N. Y., 359; *Reed* v. *Farr*, 35 id., 113; *Hunt* v. *Johnson*, 19 id., 220; *Robinson* v. *Phillips*, 1 T. & C., 151; *Pierson* v. *Mosher*, 30 Barb., 81; *Ratcliffe* v. *Gray*, 3 Keyes, 510; 3 Tr. Apps., 117.) The words "ought to be established," in the deed of plaintiff's intestate, are not an admission that the fence was not on the line. (30 Barb., 81; *Champ., etc., R. R. Co.* v. *Valentine*, 19 id., 484; *Jewell* v. *Harrington*, id., 471; *Sparrow* v. *Kingman*, 1 Comst., 242; *Stuyvesant* v. *Dunham*,

9 J. R., 61; *Jackson* v. *Wood*, 13 id., 346; *Jackson* v. *Dysling*, 2 Cai., 197; *Hubbell* v. *McCulloch*, 47 Barb., 288; *Baldwin* v. *Brown*, 16 N. Y., 359; *Reed* v. *Farr*, 35 id., 113; 1 T. & C., 151.) The survey and all testimony relating to fences, other than those of the premises in question, were improperly admitted. (16 N. Y., 359; 35 id., 113; 30 Barb., 81.) The testimony of Boynton as to his statement to Van Ornum was erroneously admitted. (*Jackson* v. *McVey*, 15 J. R., 235; 9 id., 61; 11 id., 569; *Drew* v. *Scott*, 46 N. Y., 204.) It was error to receive in evidence the deeds under which defendant claimed. (*Crary* v. *Goodman*, 22 N. Y., 175; *Sherry* v. *Frecking*, 5 Duer, 452.)

*Robt. S. Hale* for the respondent. Plaintiffs were bound to establish what was equivalent to an adverse possession in them for twenty years. (*Baldwin* v. *Brown*, 16 N. Y., 359; *Terry* v. *Chandler*, id., 354, 358; *Drew* v. *Swift*, 46 id., 204, 209; *Corning* v. *Troy I. and N. Factory*, 44 id., 577, 595, 596; *Clark* v. *Baird*, 5 Seld., 183, 204; *Clark* v. *Withey*, 19 Wend., 320; *Adams* v. *Rockwell*, 16 id., 285.) The declarations of defendant's grantor as to his conversation with plaintiffs' grantor while in possession and ownership of plaintiffs' farm were properly admitted. (*Morse* v. *Salisbury*, 48 N. Y., 636, 642; *Pitts* v. *Wilder*, 1 id., 525; *Gibney* v. *Marchay*, 34 id., 301; *Moore* v. *Hamilton*, 44 id., 666.)

RAPALLO, J. The old fence which the appellants claim to be the easterly boundary of their farm, was erected in the year 1812 by one George Throop, who was then in possession of the farm. This farm was known as the "Cross-lot." Throop cultivated the land up to this fence. The evidence shows that he erected the fence for the purpose of protecting a crop of wheat which he had planted upon the land now in controversy; and that from the time of the erection of the fence, in 1812, up to the time of the entry by the defendant, in 1866, this land continued in the actual possession of Throop and his grantees as part of the "Cross-lot" farm.

In the year 1820 the fee of this farm was conveyed to

Throop by one Hunt, by a deed which described it as then being in the possession of George Throop, and proceeded to give the boundaries. The easterly boundary was therein stated to be " the east line of the Montressor patent as the same ought to be established."

The original plaintiff in this action, Dudley H. Jones, derived title to the Cross-lot farm, from Throop, by sundry mesne conveyances, containing, as the case states, the same description.

The evidence shows an uninterrupted occupation by Dudley H. Jones and his grantors, of the Cross-lot farm, embracing within its inclosure the strip of land now in dispute, for a period of more than fifty years before the entry by the defendant. This entry took place in the year 1866, when the defendant tore down the old fence, or portions of it, and erected a new fence to the westward of it, on what he claims to be the true east line of the Montressor patent — thus cutting off from the easterly side of plaintiffs' farm the strip of land in controversy, which is from ten to twenty rods wide, and throwing this strip into his own farm. His paper title makes the east line of the Montressor patent the westerly boundary of his farm. Dudley H. Jones, the original plaintiff, thereupon brought this action of ejectment to recover the strip of land in question. He having died the present plaintiffs have been substituted.

It is clear that the possession of Dudley H. Jones and his grantors, prior to the entry by the defendant, was sufficient *prima facie* proof of title to entitle Jones or his heirs to recover in this action, unless the defendant showed a better title. This he endeavored to do by proving that the old fence was not upon the true easterly line of the Montressor patent, but that such true line was westerly of the fence, and that the premises in controversy, from which he had ejected the plaintiff, were easterly of that line, and consequently ought to have been included in the defendant's farm.

In answer to this claim the plaintiffs contend that the division line between their farm and that of the defendant

had been established by practical location, and that the old
fence which had stood since 1812, must be regarded as such
division line, whether located upon the true line of the
patent or not.

The court below dismissed the plaintiffs' complaint, and
the dismissal was sustained at General Term, on the ground
that the deeds under which the plaintiff derived title declared
the easterly line of his farm to be the easterly line of the
Montressor patent as the same " ought to be established ; "
that this was an admission that the line was not then estab-
lished, and, by implication, that the fence was not on the true
line.   It was also held that the oral proof in respect to occu-
pation and acts of acquiescence in the location of the fence
was overcome by proof that the fence was maintained for
convenience merely, and was not recognized by the respect-
ive owners as the line between their farms.

We are of opinion that the court below erred in thus dis-
posing of the case.   There was evidence of acquiescence in
the fence as a boundary line which we think should have
been submitted to the jury.   It appeared, in the first place,
that for upwards of fifty years the adjoining owners had each
occupied the land up to the old fence ; that in 1844 one
Luke Van Ornum was the owner of the Cross-lot farm and
lived on it, and one Boynton owned the adjoining farm on
the east now owned by the defendant ; that by agreement
between Boynton and Van Ornum each kept up one-half of
this fence.   As expressed in the testimony, they divided the
fence between them, one agreed to keep up the north half
and the other the south half, and they maintained it under
that agreement.   Van Ornum occupied up to the fence on
his side and Boynton did on his side.   Van Ornum conveyed
to Dudley H. Jones in 1845, but remained in possession
under him after the conveyance.   He was in possession some
seven years, and testifies that while he was in possession he
kept the south part of the fence in repair and Boynton the
north.   There was no change in the occupation of the land
until the defendant entered in 1866.

We think that these acts were competent evidence, upon which the jury might have found a practical location of the boundary line between the two farms, and a possession of more than twenty years in pursuance of such location. But the effect of these acts was sought to be destroyed by the evidence of Boynton, who testified to a conversation with Van Ornum, while the latter owned the Cross-lot, in which conversation Boynton stated to Van Ornum that Throop had said that the fence was not on the line; that he was not prepared to make a line fence, but that when they did they would make it on the line; and he, Boynton, said he claimed to the patent line.

On the trial, before Boynton was called as a witness, Van Ornum was interrogated as to conversations with him, and, in substance, denied that Boynton had ever claimed that the fence was not on the line. Boynton having been afterwards called, and having testified to a particular conversation with Van Ornum respecting the question whether the fence was a division fence, Van Ornum was then recalled by the plaintiffs, who offered to disprove by him the alleged conversation between him and Boynton, testified to by the latter, and to contradict Boynton in that regard. The defendant objected, on the ground that Van Ornum had already been fully examined. The objection was sustained, and exception taken.

In making this ruling the learned court must have assumed that the conversation testified to by Boynton had been in substance denied by Van Ornum, otherwise it was error to refuse to permit the plaintiff to examine him in respect to it. In the absence of any qualification of the acts of the parties in mutually maintaining the fence between them, such as was shown by the alleged conversation between Boynton and Van Ornum, the jury would have been authorized to infer from their acts that they had agreed to the fence being the division line between their farms. The qualification of these acts by the alleged conversation, if controverted, became a question of fact for the jury. The plaintiff expressly requested the court to submit to the jury the question of

acquiescence in the line as claimed by the plaintiff. He also requested the court to charge the jury that if they believed the respective owners had acquiesced in and maintained the old fence as the line between them for twenty years before the removal of the same by the defendant, that was evidence that the old fence was on the boundary line between the parties, and on their so finding they could find for the plaintiff. Both of these requests were refused, and exceptions taken separately to the refusals. In both refusals we think the court erred.

The judgment must, therefore, be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.